UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| **POLICE OFFICER WILLIE COLEY,** | Civil Action Number: 2:08-4325 |
| Plaintiff, | |
| v. | OPINION |
| **COUNTY OF ESSEX, ESSEX COUNTY PROSECUTOR'S OFFICE, INVESTIGATOR QUOVELLA SPRUILL and JOHN/JANE DOE,** | HON. WILLIAM J. MARTINI |
| Defendants. | |

## MEMORANDUM OPINION

This action is brought by Plaintiff Willie Coley ("Coley") against the Essex County Prosecutor's Office (the "ECPO") and Investigator Quovella Spruill ("Spruill"). Plaintiff filed the Complaint on August 28, 2008. The Complaint alleges violations of Plaintiff's civil rights under the Fourth, Fifth, and Eighth[1] Amendments, in connection with a 2007 sexual molestation investigation, in which he was the suspect, and for which he was later arrested and incarcerated. He seeks redress under 42 U.S.C. § 1983. He further alleges Defendants conspired to violate his civil rights during the investigation. Plaintiff additionally claims several New Jersey state law causes of action in relation to that investigation, including: (1) intentional infliction of emotional distress; (2) negligence; (3) malicious abuse of process; (4) false arrest; (5) false imprisonment; and (6) defamation. The state causes of action are brought pursuant to the Court's supplemental jurisdiction. *See* 28 U.S.C. § 1367. Presently before the Court is Defendants' Motion for Summary Judgment (the "Motion"). The Court, for the reasons elaborated below, will **GRANT** Defendants' motion.

## I.     BACKGROUND

On March 1, 2007, following a report from the New Jersey Department of Human Services, Office of Children's Services ("DYFS"), Defendant Spruill interviewed A.H., a

---

[1] Plaintiff concedes there is no Eighth Amendment violation. *See* Pl. Brief in Opp. to Summary Judgment 21. Plaintiff's action against Defendant County of Essex has already been dismissed (without prejudice). *See* Doc. No. 19.

fifteen year old girl who accused Plaintiff of sexual assault. Pl. Supp. Statement of Disputed Material Facts ¶ 2. Subsequently, Spruill obtained two written statements from A.H. Allegations in these two statements were consistent with the previous conversations A.H. had had with her school friends, her school counselor, and statements made independently to three DYFS workers. *See* Spruill Decl. Exhs. 1, 2. A.H. alleged Plaintiff had sexually assaulted her for a period of seven years, a period of time during which Plaintiff had been dating A.H.'s mother. *See* Pl. Supp. Statement of Disputed Material Facts ¶ 2, Harvey Decl. Exh. D. A.H. alleged Plaintiff touched her breasts and buttocks, rubbed his genitalia on her thigh and, initially, A.H. also alleged that on multiple occasions Plaintiff Coley had penetrated her. Spruill Decl. Exhs. 1, 2.

Later that night, following the interview, A.H.'s mother and A.H. consented to a wiretap in consequence of which recording devices were placed on two phone calls. *See* Harvey Decl. Exh. E. One phone call was between Plaintiff and A.H., the purported victim, and a second was between Plaintiff and the victim's mother. In the call between Plaintiff and the victim's mother, Plaintiff acknowledged he knew of A.H.'s allegations, one of which was that Plaintiff had "touched" her, and he failed to firmly deny the allegations. A similar phone call took place between A.H. and Plaintiff during which he again failed to firmly deny the allegations. *See* Spruill Decl. Exh. 4. Using the victim's multiple corroborating statements, Spruill's observation of A.H.'s demeanor while providing the statements, and the lack of a firm denial by Plaintiff in the context of the intercepted phone calls, Spruill presented a report detailing the evidence to her supervisor, Lieutenant Karen Freels. *See* Harvey Decl. Exh. D. Reviewing the evidence detailed in the report, Assistant Prosecutor Mark Ali determined probable cause existed to arrest Coley and directed Spruill to sign complaints on various charges including sexual assault, attempted sexual assault, and endangering a minor. Pl. Supp. Statement of Disputed Material Facts ¶ 6. A Municipal Court judge reviewed the complaints, found probable cause and signed a warrant for Coley's arrest. *See* Harvey Decl. Exh. J. Furthermore, a Superior Court judge, also finding probable cause, signed additional arrest warrants. *See* Spruill Decl. Exh. 5. Thereafter, on March 2, 2007, one day after Spruill's initial interview with A.H., Plaintiff turned himself in to the Montclair police department, was arrested, and was placed in jail. Pl. Supp. Statement of Disputed Material Facts ¶ 7. Purportedly unable to post bail, he remained incarcerated for 37 days. *Id*. ¶ 9.

On March 15, 2007, fifteen days after the initial report, and fourteen days after Plaintiff's arrest, A.H. submitted to both physical and psychological examinations. *Id.* ¶ 19. The psychological evaluation of A.H. revealed characteristics consistent with the profile of a sexually victimized child. *See* Harvey Decl. Exh. M, N. Interestingly, the physical evaluation revealed A.H.'s hymen to be intact. Pl. Supp. Statement of Disputed Material Facts ¶ 20. On March 21, 2007, Detective Spruill received a phone call from A.H. in which A.H. revised her statements, asserting Plaintiff had only attempted sexual intercourse with her one time,

but had touched her "a lot" within the seven-year period. *See* Harvey Decl. Exh. BB. Her revised statement seems to suggest there was no penetration during the attempt, and thus, is arguably consistent with the physical examination. *See* Spruill Decl. Exhs. CC, DD. That same day, Spruill filed a timely report alerting the prosecutor's office to A.H.'s partial recantation. *See id.* Exh. BB. Notwithstanding this partial recantation, the prosecutor's office did not drop the sexual assault charges against Plaintiff. Plaintiff was already incarcerated at the time the prosecutor's office received the physical and psychological reports, and at the time A.H. revised her statements. Plaintiff remained incarcerated for another eighteen days after A.H.'s partial recantation.

About ten months later, on January 28, 2008, A.H. and her mother visited the prosecutor's office and spoke to Detective Spruill. *See id.* Exh. EE. At that meeting, A.H. retracted her allegations, admitting she had lied for various reasons. *See id.* That same day, Spruill presented a report detailing the retraction to the prosecutor's office. *See id.*; *cf. infra* note 4. Nonetheless, on February 13, 2008, Assistant Prosecutor Ali sought to indict Plaintiff before a New Jersey grand jury. Pl. Supp. Statement of Disputed Material Facts ¶ 45. The grand jury entered a no bill decision, that is, the grand jury decided not to indict Plaintiff based upon the evidence it heard. *Id.* ¶ 48. Thereafter, Plaintiff filed this action.

## II.   STANDARD OF REVIEW

Summary judgment is appropriate "if the pleadings, the discovery [including, depositions, answers to interrogatories, and admissions on file] and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56; *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Turner v. Schering-Plough Corp.*, 901 F.2d 335, 340 (3d Cir. 1990). A factual dispute is genuine if a reasonable jury could find for the non-moving party, and is material if it will affect the outcome of the trial under governing substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). At the summary judgment stage, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477, U.S. at 249; *see also Marino v. Indus. Crating Co.,* 358 F.3d 241, 247 (3d Cir. 2004) (a court may not weigh the evidence or make credibility determinations). Rather, the court must consider all evidence and inferences drawn therefrom in the light most favorable to the non-moving party. *Andreoli v. Gates*, 482 F.2d 641, 647 (3d Cir. 2007).

To prevail on summary judgment, the moving party must affirmatively identify those portions of the record which demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323-24. The moving party can discharge the burden by showing that "on all the essential elements of its case on which it bears the burden of proof at trial, no reasonable jury could find for the non-moving party." *In re Bressman*, 327 F.3d 229, 238 (3d

Cir. 2003); *see also Celotex*, 477 U.S. at 325. If the moving party meets this initial burden, the non-moving party "must do more than simply show that there is some metaphysical doubt as to material facts," but must show sufficient evidence to support a jury verdict in its favor. *Boyle v. County of Allegheny*, 139 F.2d 386, 393 (3d Cir. 1998) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). However, if the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to [the non-movant's] case, and on which [the non-movant] will bear the burden of proof at trial," Rule 56 mandates the entry of summary judgment because such a failure "necessarily renders all other facts immaterial." *Celotex Corp.*, 477 U.S. at 322-23; *Jakimas v. Hoffman-La Roche, Inc.*, 485 F.3d 770, 777 (3d Cir. 2007).

## III.   ANALYSIS

Summary judgment in favor of the Defendants is appropriate on two grounds: (1) Eleventh Amendment immunity; and (2) the existence of probable cause to arrest Plaintiff.

*Eleventh Amendment Immunity.* The Eleventh Amendment bars Plaintiff's claims against the ECPO. The Eleventh Amendment protects non-consenting states from suits brought in federal court by private citizens seeking money damages. *Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984). The protection extends to state agencies as long as the state is the "real party in interest." *Fitchik v. N.J. Transit Rail Operations, Inc.*, 873 F.2d 655, 658 (3d Cir. 1989). Under the *Fitchik* analysis, the Third Circuit has consistently held that county prosecutor's offices are agents of the state when performing classic law enforcement and investigative functions. *See Coleman v. Kaye*, 87 F.3d 1491, 1505 (3d Cir. 1996).[2] In regard to the arrest of Plaintiff, his continued incarceration, and the decision to prosecute him in front of the grand jury, the ECPO was performing classic law enforcement and investigative functions.

Plaintiff argues the "genesis of [his] claims" are related to the ECPO's negligent hiring and negligent supervision of Detective Spruill, which are arguably administrative, not law enforcement functions. Detective Spruill was hired in 1998, nine years prior to this

---

[2] The Third Circuit had the opportunity to redefine the scope of Eleventh Amendment immunity with regard to county prosecutor's offices, but it declined to do so. *See Beightler v. Office of Essex County Prosecutor*, 2009 WL 2562717, at *2 (3d Cir. Aug. 20, 2009). In *Beightler*, a non-precedential opinion, the Third Circuit left open the possibility that law enforcement acts involving fraud, actual malice, or willful misconduct performed by a New Jersey county prosecutor's offices may have the effect of waiving the county or the county prosecutor's office's immunity. This Court declines to extend immunity law along these lines in light of the settled law of this Circuit and many precedential opinions holding otherwise. If the scope of immunity is going to be redefined, it is going to have to be redefined by the Third Circuit (or by the Supreme Court).

investigation. Plaintiff's claim of negligent hiring is far too attenuated to create liability here. As to the negligent supervision argument, Plaintiff merely restates that Spruill was deficient in regard to how she conducted the investigation. Plaintiff makes no specific showing that the county prosecutor's office's supervision was less than what is required under any state or municipal law or regulation, or practice or professional standard, or under any judicial decision. Even if one were to assume that Spruill's conduct may have been negligent, that does not, without more, establish or tend to establish that the county prosecutor's office's supervision was less than what is mandated by law, or under any professional standard. Plaintiff's argument seeking to establish administrative or supervisory failure appears to be less than complete.

*Probable Cause.* Plaintiff argues that Defendants' initial investigation was inadequate. He argues the evidence uncovered by Detective Spruill in her initial investigation was insufficient to support probable cause for his arrest because Spruill's investigation was not thorough. For example, Plaintiff contends his arrest, executed a mere twenty-four hours after Spruill's initial interview with A.H., was premature. He argues the nature of the allegations would have called for the victim to have been immediately physically examined. Moreover, Plaintiff alleges ECPO and Spruill further violated his due process rights during his continued incarceration and prosecution after they were put on notice of arguably exculpatory evidence.

Here, it appears that probable cause existed to support a valid arrest, thereby negating any claims for arrest-related purported constitutional violations. To prove a Fourth Amendment claim of false arrest, the Plaintiff must show: (1) he was arrested; and (2) the arrest was made without probable cause. *Garcia v. Munoz*, 2008 WL 2064476, at *7 (D.N.J. May 14, 2008). "Probable cause to arrest exists when the facts and circumstances within the arresting officer's knowledge are sufficient in themselves to warrant a reasonable person to believe that an offence has been or is being committed by the person being arrested." *Orsatti v. N.J. State Police*, 71 F.3d 480, 482-83 (3d Cir. 1995). Probable cause is determined considering the arresting officer's knowledge "at the moment the arrest was made." *Wright v. City of Philadelphia*, 409 F.3d 595, 602 (3d Cir. 2005).

At the time of the arrest, a time prior to the retractions and to the physical and psychological evaluations, Spruill had two consistent statements from a fifteen year old girl, an age at which a minor understands right from wrong, and is capable of distinguishing truth from lies. *See* Spruill Decl. Exhs. 1, 2. The statements were consistent with multiple allegations made by A.H. during conversations she had had with her friends, school counselors, and several DYFS workers. *See* Harvey Decl. Exhs. A, B. A.H.'s multiple corroborating statements, Plaintiff's failure to firmly deny the allegations during the intercepted phone calls, and A.H.'s demeanor while making the allegations appear sufficient to meet the probable cause standard.

Furthermore, Spruill obtained a warrant (actually, two warrants) for Plaintiff's arrest. While the existence of a warrant does not directly prove that the requisite probable cause existed, it places a higher burden on the Plaintiff to prove the evidence was insufficient. *Wilson v. Russo*, 212 F.3d 781, 786 (3d Cir. 2000). Plaintiff must show: (1) the police officer knowingly, or with reckless disregard for the truth, made false statements during the application for the warrant; and (2) the false statements were material to the finding of probable cause. *Id.* at 786-87.

There is no evidence to show Detective Spruill knowingly, intentionally, or willfully made false statements in the application for the warrant. Plaintiff argues Spruill's conduct was reckless. He argues Spruill's questions might not have been sufficiently probing or might not have conformed to standard police practice with regard to questioning a sexual assault victim. Furthermore, as argued by the Plaintiff's expert witness, *in his unsworn report*,[3] Spruill could have ordered a physical test immediately and waited for the results before effectuating the arrest. Although Spruill could have ordered such a test before the arrest, the Court finds that the information and evidence before Spruill constituted probable cause, or, if the evidence was less than what is necessary to establish probable cause, Spruill's conduct, at worst, may have constituted negligence. As explained, at the time of the arrest, Spruill had A.H.'s statements and the other corroborating information sufficient to meet the probable cause standard. In every investigation where a witness or alleged victim lies to a police investigator, it is possible the lie could have been ferreted out by more probing questions. But, an investigator's failure to ferret out a lie does not, standing alone, constitute reckless conduct. Moreover, Plaintiff points to no facts, no expert evidence, no treatise, no statute, no regulation, no professional standard, and no judicial decision establishing that, under these circumstances, Spruill's conduct fell below the professional standard for police investigators. The Court sees no evidentiary basis for characterizing Spruill's conduct as reckless. Finally, the Court notes that although Fourth Amendment decisional law is well-developed, neither party has put forward any case discussing an investigator's liability where the evidentiary basis for a decision to arrest was (allegedly) undermined by subsequent developments. Given this factual novelty, Spruill would seem to have a strong qualified immunity defense. *See Pearson v. Callahan*, 555 U.S. ----, 129 S. Ct. 808 (Jan. 21, 2009).

Plaintiff alleges Spruill violated his due process rights by continuing to prosecute him after the victim's partial recantation of March 2007, and her complete retraction of January 2008. Plaintiff argues the recantations should have terminated the prosecution against him. To prevail on a Section 1983 malicious prosecution action, Plaintiff must show:

---

[3] An unsworn expert report does not constitute evidence in regard to making a summary judgment determination. *See Fowle v. C&C Cola*, 868 F.2d 59 (3d Cir. 1989). Nevertheless, the Court has read the report. Plaitiff's expert rebuttal report is neither sworn to nor signed. Doc. No. 26, Exh. Q.

6

(1) defendant initiated a criminal proceeding; (2) the proceeding ended in the plaintiff's favor; (3) the proceeding was initiated without probable cause; (4) defendant acted maliciously or for a purpose other than bringing Plaintiff to justice; and (5) plaintiff suffered a deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding. *DiBella v. Borough of Beachwood*, 407 F.3d 599, 601 (3d Cir. 2005). The existence of probable cause at the outset of the investigation appears to be a sufficient defense to a malicious prosecution claim. *Pomykacz v. Borough of West Wildwood*, 438 F. Supp. 2d 504, 510 n.8 (D.N.J. 2006). Here, probable cause existed at the outset.

More importantly, with regard to Plaintiff's continued incarceration and the decision to continue the prosecution in grand jury proceedings, Defendant Spruill does not seem to be liable. Liability under Section 1983 requires "personal participation" in the alleged rights violation. *C.H. ex rel. Z.H. v. Olivia*, 226 F.3d 198, 201 (3d Cir. 2000). It is not contested that Spruill was an investigator for the County, but Plaintiff has made no showing that Spruill was a decision-maker with regard to continuing the case against Plaintiff. It appears that decision rested with her superior, the assistant county prosecutor, Mark Ali. It is true that Spruill knew of the recantations, but it is equally true that she sent timely reports detailing those recantations to Ali. *See* Harvey Decl. Exhs. BB, EE. In these circumstances, it cannot be maintained that Spruill participated or acquiesced in the purported violations of Plaintiff's rights.

*Conspiracy*. Finally, the Court will also dismiss the alleged conspiracy because Spruill's actions were within the scope of her employment. *See Stouch v. Township of Irvington*, 2008 WL 2783338 (D.N.J. July 16, 2008).

*State Law Claims.* The Court declines to exercise supplemental jurisdiction over the state law claims absent a viable federal cause of action. *See* 28 U.S.C. § 1367; *Tarus v. Borough of Pine Hill*, Civil Action No. 1:01-4468, at *25-25, *aff'd*, 105 Fed. Appx. 357, 361 (2004).

## IV.   CONCLUSION

For the reasons elaborated above, the Court **GRANTS** the Defendants' Motion for Summary Judgment. This action is terminated. An appropriate order accompanies this memorandum opinion.

s/ William J. Martini
**DATE: August 4, 2010**     **William J. Martini, U.S.D.J.**